## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOM VOLPE and PATRICIA VOLPE (h/w) | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JETRO HOLDINGS, d/b/a JETRO CASH & | : | |
| CARRY and TODD RUSSELL | : | NO.  08-3521 |
| | : | |
| Defendants. | : | |

### MEMORANDUM

RONALD L. BUCKWALTER                                      November 14, 2008

       Currently pending before the Court is a Motion to Dismiss and to Compel Binding Arbitration by Defendants Jetro Holdings, d/b/a Jetro Cash & Carry ("Jetro") and Todd Russell (collectively "Defendants").  For the following reasons, the Motion is granted.

## I.  FACTS AND PROCEDURAL HISTORY

       According to the allegations of the Complaint, Plaintiff Tom Volpe was hired by Defendant Jetro on December 7, 1989, and, at all times relevant to this lawsuit, Mr. Volpe served as an Assistant Branch Manager for Jetro.  (Id. ¶¶ 2,7.)  Subsequently, in July 2006, Jetro hired Defendant Todd Russell as a full-time regional manager.  (Id. ¶ 8.)  Russell acted as Mr. Volpe's supervisor.  (Id. ¶ 9.)  Mr. Volpe had informed his previous regional manager that he suffered from Hepatitis C and, in July 2006, provided Defendant Russell with the same information.  (Id. ¶¶ 10-11.)

Sometime after July 2006, Mr. Volpe's treating physician recommended that he take leave due to the severity of his medical condition.  (Id. ¶ 12.)  Although Mr. Volpe informed Defendants of the doctor's recommendation, he nonetheless continued to work.  (Id. ¶¶ 12-13.)  On July 17, 2006, Mr. Volpe was reprimanded, purportedly for the first time as an employee of Jetro, for "sub-par performance."  (Id. ¶ 14.)

Mr. Volpe was involved in a motor vehicle accident, on November 11, 2006, sustaining fractured ribs and chipped bones in his ankle.  (Id. ¶ 16.)  As a result, he was required to miss work, using both personal and vacation days to cover for his absences.  (Id. ¶ 17.)  Some time thereafter, he returned to work in a light-duty capacity.  (Id. ¶ 18.)

On January 15, 2007, Defendants reprimanded and suspended Mr. Volpe for two days for billing a customer incorrectly.  (Id. ¶ 19.)  Nine days later, he was terminated for alleged "misconduct."  (Id. ¶ 20.)

Upon termination, Mr. Volpe applied for a position with Mr. Lee's Wholesale Delivery Service ("Mr. Lee's").  (Id. ¶ 22.)  Mr. Lee's shares work space on the premises owned and occupied by Defendant Jetro.  (Id. ¶ 23.)  According to the Complaint, Defendants Jetro and Russell forced the owner of Mr. Lee's to fire Mr. Volpe.  (Id. ¶ 24.)  Thereafter, Mr. Volpe applied for positions with BJs, Cisco Systems, Inc. and several other potential employers, none of whom offered employment.  (Id. ¶¶ 25-26.)  Ultimately, in October 2007, Mr. Volpe began working for ShopRite Supermarkets.

After his termination from Mr. Lee's, but within one year of that date, Mr. Volpe allegedly filed a timely complaint with the Pennsylvania Human Relations Commission ("PHRC").  (Pls.' Opp. Mot. Summ. J. 2.)  Subsequently, on July 28, 2008, Mr. Volpe, and his

wife Patricia (collectively "Plaintiffs"), commenced this action in federal court.  The Complaint

alleges violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

(Count I), tortious interference with an existing and/or prospective business relationship (Count

II), intentional infliction of emotional distress (Count III), and loss of consortium (Count IV).

(Compl. ¶¶ 27-51.)  Defendants filed the instant Motion to Dismiss and to Compel Arbitration on

October 1, 2008.

## II.   STANDARD FOR MOTION TO COMPEL ARBITRATION

When ruling on a motion to compel arbitration under the Federal Arbitration Act

("FAA"), 9 U.S.C. § 1, *et seq.*, a court may only determine whether the merits of the case should

be arbitrated or litigated, and may not consider the merits of the underlying claims.  Great W.

Mtg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997).  Before compelling arbitration, a court

must ensure that:  (1) the parties entered into a valid arbitration agreement; and (2) the dispute

between the parties falls within the language of the arbitration agreement.  John Hancock Mut.

Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1988).

Notably,  "[m]otions to compel arbitration are reviewed, in the first instance,

under the well-settled summary judgment standard set forth in Fed. R. Civ. P. 56(c)."  Bellevue

Drug Co. v. Advance PCS, 333 F. Supp. 2d 318, 322 (E.D. Pa. 2004).  "Therefore, movants must

prove through 'pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, . . . that there is no genuine issue as to any material fact and

that they are entitled to judgment as a matter of law.' "  Id. (quoting Fed. R. Civ. P. 56(c)).  The

court must consider all of the non-moving party's evidence and construe all reasonable inferences

in the light most favorable to the non-moving party.  Id. (citing Anderson v. Liberty Lobby, Inc.,

3

477 U.S. 242, 255, 106 S. Ct. 2505 (1986); Versarge v. Twp. of Clinton N.J., 984 F.2d 1359, 1361 (3d Cir. 1993)).

## III.   DISCUSSION

The entirety of Defendants' argument contends that Plaintiffs' claims are subject to and encompassed in a mandatory Arbitration Agreement that the parties entered into on or about September 11, 2002.  Defendants claim that Plaintiffs' Complaint should be dismissed pursuant to the FAA, and that this matter should be compelled to arbitration before the American Arbitration Association.

Section 2 of the FAA provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The purpose of the Act was to abolish the common law rule that arbitration agreements were not judicially enforceable."  Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985).  The FAA, therefore, "preempts state law that might 'undercut the enforceability of arbitration agreements.'"  Id. (quoting Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S. Ct. 852 (1984)).

The FAA creates a strong policy in favor of arbitration.  Any doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of arbitration.  AT & T Techs., Inc. v. Comm'n Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986).  Nonetheless, a court cannot order the arbitration of any claim unless the parties to a dispute have agreed to arbitration.  Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54 (3d Cir. 2000).  Before compelling an unwilling party to arbitrate, section 4 of the FAA requires the court to ensure that the dispute is arbitrable.  AT&T Tech., 475

U.S. at 648-649.  If a valid agreement exists and the controversy falls within its terms then, as noted above, the clause "shall be valid, irrevocable, and enforceable," and the court must mandate arbitration.  9 U.S.C. § 2.

In the case at bar, Mr. Volpe and Defendant Jetro entered into a mandatory Arbitration Agreement for employment-related claims, whereby both parties agreed to submit all employment disputes to binding arbitration, as follows:

> **Mandatory and Exclusive Dispute Resolution Method:**  The Company and Employee agree that the exclusive method for resolving disputes arising out of or relating to Employee's employment with the Company shall be final and binding arbitration as set forth below.  If a dispute is within the scope of this agreement, it must be resolved, if at all, by the procedures set forth below.
>
> **Scope of Arbitration Obligation:**  A dispute is within the scope of this agreement, and may be submitted to arbitration hereunder, if it arises out of or relates to the Employee's employment relationship with the Company and is otherwise eligible for arbitration as set forth herein.  Examples of eligible disputes include without limitation those against the Company and/or any of its employees, agents or representatives, by or through the Employee that arise out of or relate to any oral or written contract, agreement or understanding or are based in any common-law principle, including without limitation wrongful or retaliatory discharge; fraud; misrepresentation; defamation; negligent hiring; negligent retention; negligent infliction of emotional distress; and intentional infliction of emotional distress; and any federal, state or local statute or ordinance, with all amendments thereto, including without limitation, the Civil Rights Acts of 1866, 1871, 1964 and 1991; the Age Discrimination in Employment Act of 1967; the Rehabilitation Act of 1973; the Employee Retirement Income Security Act of 1974; the Americans With Disabilities Act of 1990; the Family and Medical Leave Act of 1993; applicable state laws, including without limitation state laws against discrimination, conscientious employee protection acts, family and medical leave acts and similar law or ordinances of any other jurisdiction that may apply.

(Defs.' Mem. Supp. Mot. Dismiss, Ex. B.)

Defendants contend that Mr. Volpe signed and dated this Arbitration Agreement, demonstrating his acceptance of the mandatory and binding arbitration program, in exchange for his continued employment with the company.  Moreover, they argue that the plain language of the Arbitration Agreement specifically covers Plaintiffs' claims of violation of the FMLA, tortious interference with existing and/or prospective business relationships, and intentional infliction of emotional distress.  Accordingly, Defendants assert that Plaintiffs' claims should be ordered to binding arbitration.

Plaintiffs do not contest either the validity or the scope of the Arbitration Agreement. Rather, they argue that Defendants have waived their right to demand arbitration of these claims.  Such a contention raises two inquiries.  First, the Court must, as a threshold matter, determine whether such a claim may be resolved judicially, or whether it must be referred to an arbitrator.  Second, assuming our jurisdiction over such an inquiry, the Court must consider whether Defendants' actions constituted a waiver of their right to arbitrate.

### A.      Whether the Court May Consider the Waiver Issue

The first issue is whether a claim of waiver of arbitration rights may be determined by the Court.  The United States Supreme Court, in Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S. Ct. 588 (2002), directly addressed the question of which disputes fall within the province of the courts and which fall within the province of the arbitrator, explaining that "the question whether the parties have submitted a particular dispute to arbitration, i.e. the 'question of arbitrability,' is an 'issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"  Id. at 83, 123 S. Ct. at 591 (quoting AT&T

Techs., 475 U.S. at 649).  The Court noted that the phrase "question of arbitrability" only applies where "contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate."  Id. at 83-84. In other words, whether the parties are bound by an arbitration clause, or whether a valid arbitration clause applies to a particular type of dispute remain questions of arbitrability for the court to decide.  Id. at 84.

On the other hand, the Supreme Court noted that the phrase "question of arbitrability" is "*not* applicable in other kinds of general circumstances where parties would likely expect that an arbitrator would decide the gateway matter."  Id. at 84.  Therefore, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide."  Id.  (internal quotations omitted).  "[T]he presumption is that the arbitrator should decide allegation[s] of waiver, delay or a like defense to arbitrability."  Id. at 84 (internal quotations omitted).

The Third Circuit, however, has distinguished Howsam's seemingly general prohibition on court consideration of issues of waiver and delay, noting that "the [Howsam] Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration . . . and not to claims of waiver based on active litigation in court."  Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 219 (3d Cir. 2007).  As such, the Third Circuit concluded that "waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide."  Id. at 221; accord Marie v. Allied Home

7

Mtg., 402 F.3d 1, 13 (1st Cir. 2005) ("[w]here the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings.")

In this case, Plaintiffs ask the Court to find waiver on the basis of Defendants' purported litigation activities before the PHRC and in this forum.  Such an allegation does not involve any alleged non-compliance with contractual conditions precedent to arbitration, but rather depends solely on litigation conduct.  Accordingly, the Court finds, under Third Circuit precedent, that the waiver issue is a gateway matter appropriate for judicial resolution.

### B.    Whether Defendants Have Waived Their Right to Arbitration

The Court turns to the second inquiry of whether Defendants waived their right to compel arbitration.  "An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration."  Northwestern Nat. Life Ins. Co. v. U.S. Healthcare, Inc., Civ. A. No. 96-4659, 1998 WL 252353, at *14 (E.D. Pa. May 11, 1998) (quotations omitted).  "[W]aiver of contractual rights to arbitration is not to be favored or 'lightly inferred.'" Klein v. Boyd, 949 F. Supp. 286, 289 (E.D. Pa. 1996).  "Although prejudice remains the ultimate 'touchstone' in determining waiver," the court must consider several other factors when analyzing a waiver claim, including: "(1) the degree to which the party seeking to compel arbitration has contested the merits of his opponent's claims; (2) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; (3) the extent of its nonmerits motion practice; (4) the moving party's assent to the district court's pretrial orders; and (5) the extent of the discovery."  Id. (citing Paine

Webber, Inc. v. Faragalli, 61 F.3d 1063, 1069 & n.4 (3d Cir. 1995)).  Under this test, "[w]aiver

will normally be found only 'where the demand for arbitration came long after the suit

commenced and when both parties had engaged in extensive discovery.'"  Faragalli, 61 F.3d at

1068-69 (quoting Gavlick Constr. Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3d Cir. 1975)).

   Plaintiffs argue that Defendants' actions implicitly resulted in a waiver of their

right to compel arbitration.  Specifically, Plaintiffs aver that they filed a claim with the

Pennsylvania Human Rights Commission ("PHRC") within one year of Mr. Volpe's January

2007 termination from Defendants' employment, and prior to initiating this lawsuit.  Despite

allegedly participating in the defense of that claim, Defendants never sought to compel

arbitration or in any way notify Plaintiffs that they were required to arbitrate their claims under

the Arbitration Agreement.  As a result, Plaintiffs were "lulled into a false sense of security that

[they were] following the appropriate procedures for resolution of [their] claims."  (Pls.' Opp.

Mot. Summ. J. 8.)  Because more than one year has now passed since the events giving rise to

their claims, Plaintiffs argue that they will be unduly prejudiced under the express language of

the Arbitration Agreement, which states:

> No dispute shall be eligible for submission to arbitration under this
> policy where one year shall have elapsed from the occurrence or
> event giving rise to the dispute.  Filing a claim within this period is
> a condition precedent to arbitration – the exclusive method for
> resolving disputes arising out of or relating to Employee's
> employment with the Company.  The one-year period set forth
> herein is not in the nature of a statute of limitations, but a temporal
> limitation on the substantive scope of this agreement.  The parties,
> however, may mutually agree in writing to extend the time period
> within which one must submit his, her or its written arbitration
> request to the AAA.
>
> * * *

9

> **Waiver:** The parties agree that, with respect to any dispute, the
> failure to request arbitration within the time and according to the
> procedures set forth herein shall operate as a waiver and general
> release in favor of the defending party or parties of any and all
> rights the waiving party . . . may have had to assert in arbitration or
> any other forum any and all claims arising out of such dispute.

(Defs.' Mem. Supp. Mot. Dismiss, Ex. B.)

Plaintiffs' arguments fail on several grounds.  First, aside from their bald

averments raised for the first time in their opposition brief, Plaintiffs have offered no factual

details or evidentiary support regarding the PHRC proceedings.  For example, although Plaintiffs

claim that the PHRC Complaint was filed within one year from the date of his termination, they

fail to either provide the date it was filed or indicate how long it was pending.  Moreover, while

stating that Defendants "participat[ed] in the defense of that claim," Plaintiffs neglect to argue,

let alone prove, that Defendants actually litigated Plaintiffs' claims before the PHRC.  (Pls. Opp.

Mot. Summ. J. 7-8.)  Finally, Plaintiffs fail to indicate when the PHRC proceedings ended, the

Commission's ultimate decision, and the basis for any delay before the initiation federal

proceedings.

Moreover, even taking as true all of the factual averments in Plaintiffs' opposition

brief, Defendants' failure to raise an arbitration defense during administrative proceedings did

not constitute a waiver of that defense.  The Third Circuit Court of Appeals has recognized that

"although a plaintiff has an obligation to exhaust her administrative remedies as a prerequisite to

suit, . . . [there is] no authority that requires a defendant to proffer every possible defense or legal

argument before the [administrative body] . . ." Petruska v. Gannon Univ., 462 F.3d 294, 308

(3d Cir. 2006).  While the Third Circuit has not explicitly addressed the question of whether a

defendant must move to compel arbitration during administrative proceedings, numerous other courts have repeatedly held that "a party's participation in EEOC or local agency proceedings is not inconsistent with the right to arbitrate."  See Hankee v. Menard, Inc., Civ. A. No. 01-661, 2002 WL 32357167, at *5 (W.D. Wis. Apr. 15, 2002) (citing cases).  For example, in Marie v. Allied Home Mtg. Corp., 402 F.3d 1 (1st Cir. 2005), the issue before the First Circuit Court of Appeals was "whether an employer waives its contractual right to compel arbitration of a Title VII claim by not filing for arbitration after the employee initiates an EEOC complaint, but instead waiting and only moving to compel arbitration after the employee later files a civil claim in federal court."  Id. at 3.  The court held that,

> an employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings.  The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate.

Id. at 16.  Ultimately, the court declined to adopt a rule that "force[s] the employer to make a wasteful, preemptive decision to arbitrate when it has no idea whether a dispute will still exist."  Id. at 17.

Similarly, in Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir. 2000), the Eleventh Circuit faced a claim of waiver based, in part, on the defendant employer's participation in and failure to demand arbitration during the pendency of EEOC proceedings.  Id. at 1223.  The court rejected this argument, recognizing that a defendant has "no obligation to make a pre-suit demand for arbitration."  Id.  The court concluded that because "the demand for

arbitration was made promptly after the lawsuit was filed," the plaintiff "did not incur the delay or expense associated with litigation that might otherwise demonstrate prejudice."  Id.

Numerous other federal courts confronting this issue have reached the identical conclusion.  See Barna v. Wackenhut Svcs., Civ. A. No. 07-147, 2007 WL 3146095, at *6 (N.D. Ohio Oct. 25, 2007) (finding defendant's failure to demand arbitration during EEOC proceedings did not constitute a waiver of right to arbitrate); Taleb v. AutoNation USA Corp., Civ. A. No. 06-2013, 2006 WL 3716922, at *6-7 (D. Ariz. Nov. 13, 2006) (rejecting claim that defendant employer's participation in administrative proceedings constituted waiver of right to arbitrate); Santos v. GE Capitol, 397 F. Supp. 2d 350, 356 (D. Conn. 2005) (declining to find employer's participation in EEOC arbitration to be a waiver of right to arbitrate); Gonzalez v. GE Group Admrs., Inc., 321 F. Supp. 2d 165, 171-72 (D. Mass. 2004) (finding that defendant employers' participation in administrative proceedings before the EEOC and local agency, accompanied by their failure to seek to compel arbitration, did not constitute a waiver of their right to arbitration); Hankee, 2002 WL 32357167, at *4 ("an employer may participate in EEOC proceedings without losing its rights under the arbitration agreement."); Medina v. Hispanic Broad. Corp., Civ. A. No. 01-2278, 2002 WL 389628, at *5-6 (N.D. Ill. Mar. 12, 2002) (rejecting argument that defendant waived its right to enforce the arbitration agreement by not asserting this right during the EEOC's investigation or during a settlement conference at the Illinois Human Resource Commission, where defendant filed its motion to compel arbitration two months after receiving service of process); Roberson v. Clear Channel Broad., Inc., 144 F. Supp. 2d 1371, 1375 (S.D. Fl. 2001) (declining to find waiver where defendant did not make a demand for arbitration during EEOC proceedings).

Applying this principle to the case at bar, the Court finds that Defendants had no obligation to move to compel arbitration during administrative proceedings before the PHRC. Although Plaintiffs could not have initiated a judicial action prior to the completion of the administrative proceedings, they were not precluded from exercising their rights under the Arbitration Agreement.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 29, 111 S. Ct. 1647, 1653 (1991) ("the mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration.").  Plaintiffs' failure to seek arbitration during the pendency of the PHRC proceedings did not shift the burden to Defendants to preemptively demand arbitration, in the event that Plaintiffs chose to pursue claims against them following the conclusion of those proceedings.

Plaintiffs' invocation of prejudice is similarly unavailing.  While they are correct that prejudice is the touchstone of the waiver analysis, mere prejudice is not enough.  Klein v. Boyd, 949 F. Supp. 286, 289 (E.D. Pa. 1996).  The waiver must be effected by the inconsistent actions of the waiving party.  Northwestern Nat. Life Ins. Co. v. U.S. Healthcare, Inc., Civ. A. No. 964659, 1998 WL 252353, at *14 (E.D. Pa. May 11, 1998).  Defendants, in this case, took no actions inconsistent with their right to demand arbitration.  Indeed, Defendants filed the current Motion to Compel Arbitration slightly over two months after the initiation of this lawsuit and a mere forty-three days after execution of the Summons.  See Hankee, 2002 WL 32357167, at *5.  (The general rule is that "a party must demand arbitration as early as feasible once litigation has begun.").  While Plaintiffs allege that they were "lulled into believing that they were pursuing appropriate measures to resolve their claims against the defendants," Mr. Volpe, having signed the Arbitration Agreement, cannot now claim ignorance of its provisions in order

13

to avoid its mandates.  Any prejudice now faced by Plaintiffs comes as a result of their own inaction and not any litigation activity on the part of Defendants.

In a last ditch effort, Plaintiffs appeal to equity to argue that, in the event arbitration is compelled, Defendants should be precluded from enforcing the provision of the Arbitration Agreement, which provides that "the failure to request arbitration within the [one year time limit] . . . shall operate as a waiver and general release in favor of the defending party or parties of any all rights the waiving party . . . may have had to assert in arbitration . . ." (Def.'s Mem. Supp. Mot. Dismiss, Ex. B.)   Such a decision, however, would be based on an interpretation of a contractual condition precedent to arbitration[1] and, as such, is not within this Court's province.  See Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 219 (3d Cir. 2007) (recognizing, under Howsam, that the arbitrator, not the court, must address issues of waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration).  We, therefore, decline to make any such determination.

As Plaintiffs have failed to show that Defendants waived their right to arbitration, the Court deems the Arbitration Agreement binding on the current dispute.  Accordingly, the Court grants the Motion to Compel Arbitration and dismisses the Complaint with prejudice.[2]

---

1.   As noted above, the Arbitration Agreement states that "[f]iling a claim within [the one year] period is a condition precedent to arbitration."  (Defs.' Mem. Supp. Mot. Dismiss, Ex. B.)

2.   Although Plaintiffs' loss of consortium claim is not subject to the Arbitration Agreement, it is well-established that a loss of consortium claim is derivative in nature and must be dismissed if the claim from which it is derived is dismissed.  Petrocelli v. Daniel Woodhead Co., A Subsidiary of Woodhead Indus., Inc., 993 F.3d 27, 30 (3d Cir. 1993).

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TOM VOLPE and PATRICIA VOLPE (h/w) | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JETRO HOLDINGS, d/b/a JETRO CASH & | : | |
| CARRY and TODD RUSSELL | : | NO.  08-3521 |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this *14ᵗʰ* day of *November*, 2008, upon consideration of the Motion
by Defendants, Jetro Holdings doing business as Jetro Cash & Carry, and Todd Russell, to
Dismiss and to Compel Arbitration (Doc. No. 10), and the Response thereto by Plaintiffs Tom
Volpe and Patricia Volpe (Doc. No. 11), it is hereby **ORDERED** that the Motion is **GRANTED**
and that Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE.**

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.